# UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |
|---|---|
| **ELAINE L. CHAO, Secretary of Labor,**<br>**United States Department of Labor,** | : |
|  | : |
|  | : |
| **Petitioner,** | : |
|  | : |
| **v.** | : |
|  | : |
| **INTERNATIONAL UNION OF OPERATING**<br>**ENGINEERS LOCAL 150,** | : |
|  | : |
|  | : |
| **Respondent.** | : |
|  | : |

:       **Civil Action**

:       **File No.**

```
FILED: MAY 28, 2008
08CV3091             AEE
JUDGE SHADUR
MAGISTRATE JUDGE MASON
```

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## PETITION TO ENFORCE SUBPOENA DUCES TECUM

Elaine L. Chao, Secretary of Labor, United States Department of Labor, by her attorney, Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, alleges:

1.    The Secretary's Petition is brought under the authority of section 601 of the Labor-Management Reporting and Disclosure Act of 1959, as amended, (29 U.S.C. 401 *et seq.* ) hereinafter referred to as the "LMRDA" or "the Act" and pursuant to 28 U.S.C. §§1331 and 1345, to enforce a Department of Labor subpoena duces tecum.

2.    Respondent, International Union of Operating Engineers Local 150, ("Local 150" or the "Union"), an Illinois corporation, at all times relevant to this action, has maintained its principal office at 6200 Joliet Road, Countryside, Illinois, within the jurisdiction of this court.

3.    Petitioner, Secretary of Labor, by and through her authorized agents within

the Department of Labor, is conducting an investigation concerning the election procedures of International Union of Operating Engineers Local 150. More particularly, the investigation focuses on whether the August 25, 2007 election of officers of Local 150, was conducted in accordance with the provisions of Title IV of the Act and whether Local 150 or any person associated with it has violated or is about to violate Title IV of the Act. In this investigation the Department of Labor seeks to obtain various documents and records pertaining to the subject. See Declaration of Mary J. Kebisek, submitted herewith as Appendix A.

4.    A subpoena duces tecum was duly issued on March 14, 2008, and signed by Mary J. Kebisek, District Director, Office of Labor-Management Standards, United States Department of Labor, a duly acting and authorized representative of the petitioner [Attachment 2 to Appendix A]. The subpoena duces tecum directed the respondent to appear before Senior Investigator Shamus McGee, a duly acting and authorized representative of the petitioner, at 230 South Dearborn, Suite 774, Chicago, Illinois, on March 21, 2008 at 10:00.a.m. to produce various records, books, papers, and documents fully described in an attachment to the subpoena. This subpoena duces tecum was served upon respondent by delivering a copy by facsimile to attorney Dale Pierson at the office of the counsel of the union, who accepted service, as certified in the return of service.

5.    On March 21, 2008, respondent, by one of its attorneys, responded to the subpoena duces tecum in writing, declining to comply with portions of the subpoena [Attachment 3 to Appendix A]. A list of documents that have not been produced is set forth as Attachment 4 to Appendix A.

6.    The documents specified in the subpoena duces tecum and required therein

to be produced, which the Fund refuses to produce, were at the time of the issuance of the subpoena, and are now, relevant, material, and appropriate to the determination of whether Local 150, or any person associated with it has violated or is about to violate any provisions of the Act, except Title I or amendments made by the Act to other statutes.

7.    The refusal of the Local 150 to produce the subpoenaed documents as specified and required by the subpoena duces tecum, has impeded and continues to impede petitioner's investigation.

8.    No previous applications have been made for the relief demanded herein.

WHEREFORE, the Secretary of Labor respectfully prays:

1.    That this Court enter an order directing the respondent to show cause why the respondent should not comply with and obey the subpoena duces tecum;

2.    That this Court enter an order directing the respondent to obey the subpoena duces tecum by ordering the production of the documents called for by the terms of the subpoena duces tecum before any proper officer of the Department of Labor, at such time and place as hereinafter may be fixed by such officer, and by ordering the respondent to appear for the purpose of providing information regarding said documents; and

**3.**     That this Court grant such other and further relief as it deems just and proper.

Respectfully submitted,

**PATRICK J. FITZGERALD**
United States Attorney

By:     _____
        CRAIG A. OSWALD
        Assistant United States Attorney
        219 South Dearborn, Fifth Floor
        Chicago, Illinois 60604
        (312) 886-9080
        Craig.Oswald@usdoj.gov

# APPENDIX A

### UNITED STATES DISTRICT COURT
### FOR THE
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                                :
ELAINE L. CHAO, Secretary of Labor,             :
United States Department of Labor,              :
                                                :
                           Petitioner,          :          Civil Action
                                                :
                                                :          File No.
      v.                                        :
                                                :
INTERNATIONAL UNION OF OPERATING                :
ENGINEERS LOCAL 150,                            :
                                                :
                           Respondent.          :
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

### DECLARATION OF MARY J. KEBISEK

Mary J. Kebisek declares as follows:

1.    I am presently employed as District Director for the Office of Labor Management Standards ("OLMS"), United States Department of Labor, stationed in Chicago, Illinois.

2.    As a result of a complaint filed by Joseph Ward on January 7, 2008 with the Office of Labor-Management Standards, alleging irregularities in the conduct of the August 25, 2007, election of officers of International Union of Operating Engineers Local 150 ("Local 150" or "the Union"), an investigation by the Office of Labor-Management Standards was initiated to determine whether any person had violated, or was about to violate any provision of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 *et seq.*, except for Title I or amendments made by the Act to other statutes.

3.    The protests incorporated by reference in the complaint, allege, *inter alia,*

approximately thirty violations of Title IV of the Labor-Management Reporting and Disclosure Act of 1959 including inadequate safeguards, illegal use of employer and union funds, ineligible voters, disparate candidate treatment, failure to follow the union's constitution and bylaws, and lack of ballot secrecy. A copy of the complaint of Joseph Ward dated January 7, 2008 is submitted herewith as Attachment 1.

4.      A subpoena duces tecum was duly issued on March 14, 2008 and signed by me as District Director, Office of Labor-Management Standards, United States Department of Labor, a duly acting and authorized representative of the petitioner. The subpoena duces tecum directed the respondent to appear before Senior Investigator Shamus McGee, a duly acting and authorized representative of the petitioner, at 230 South Dearborn, Suite 774, Chicago, Illinois, on March 21st, 2008 at 10:00.a.m. to produce various records, books, papers, and documents fully described in an attachment to the subpoena. This subpoena duces tecum was served upon respondent by delivering a copy by facsimile to attorney Dale Pierson at the office of the counsel of the union, who accepted service, as certified in the return of service. A copy of the subpoena duces tecum is submitted herewith as Attachment 2.

5.      On March 21, 2008, the respondent, by one of its attorneys, Dale D. Pierson, General Counsel, responded to the instant subpoena duces tecum in writing, expressly declining to comply with the subpoena. A copy of that letter is submitted herewith as Attachment 3.

5.      Although the Union has provided some documents pursuant to the subpoena, it has failed to provide the remaining documents. [A list of documents not yet received is submitted herewith as Attachment 4.]

2

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___5/9/08___                    _____Mary Kebisek_____
                                            **MARY J. KEBISEK**

# ATTACHMENT 1

January 7, 2008


Mary J. Kebisek, District Director
Chicago District Office
U.S. Department of Labor, OLMS
230 S. Dearborn St., Room 774
Chicago, IL 60604

RE:    International Union of Operating Engineers, Local 150
       Union Officer Election Complaint

Dear Ms. Kebisek:

We are filing this complaint with the Department of Labor based on the failure of the union to remedy the various violations of the LMRDA that the union allowed to occur during the election process. The issues and allegations we raised were filed internally with Local 150 and then with the International Union of Operating Engineers and are enclosed here in the attached document titled "Election Protest."

We have exhausted our efforts to seek remedy with the Local Union and with the International. On August 25, 2007, the ballots were counted on the election. On September 21, 2007, Local 150 was served our protest (see attached proof of delivery from the United States Post Office). Local 150 denied our protest. Finally on Nov 14, 2007, the International Union of Operating Engineers received our appeal of Local 150's denial of our protest (attached is our letter and proof of delivery from the United States Post Office). As of today's date neither the Local nor the International has remedied the election violations nor have they instructed that a new election be run.

Therefore we request that the Department of Labor investigate and remedy, if possible, the attached described election violations.

Sincerely,

Joseph P. Ward
Member in Good Standing

James J. Miller
Member in Good Standing

Roger F. Allen
Member in Good Standing

James R. Yasko
Member in Good Standing

JPW/ls

enclosure

Contact Information:

Joseph P. Ward
708-218-2179
20923 S. River Rd.
Shorewood, IL 60404

James J. Miller
708-218-2179
8360 Mendingwall Dr.
Woodridge, IL 60517

Roger F. Allen
815-985-7298
3915 Rockview Rd.
Rockford, IL 61109

James R. Yasko
815-276-8115
4620 W. Grand Ridge Rd.
Verona, IL 60479

September 17, 2007

Steven M. Cisco, Recording-Corresponding Secretary
International Union of Operating Engineers Local 150
6200 Joliet Road
Countryside, IL 60525

RE:    Filing of Election Protest

Dear Mr. Cisco:

The candidates of Team 150 are protesting the results of the August 25, 2007
election according to the By-Laws of the International Union of Operating
Engineers, Local 150, Article XIV – Petitions and Nominations, Election and
Installation, Section 13. Election Protest and the Constitution of the International
Union of Operating Engineers, Article XXIV. Subdiv. 1. Section (g).

The specific reasons for this protest are set forth in writing and are presented to
you in the enclosed *Election Protest* document.

I am submitting this protest and these supporting documents on behalf of and as
representative of our Team 150 candidates.

Yours truly,

Joseph P. Ward

JPW/lms

enclosure

sent via USPS Registered Mail

## *ELECTION PROTEST*

*The following members of IUOE Local 150 hereby file an Election Protest to the 2007 election of officers pursuant to Article XIV, Section 13. The election results of August 25, 2007 must be set aside, declared null and void, and a new election must be ordered. This action is required on account of the numerous election irregularities and infractions which occurred in violation of federal labor laws governing fair elections, as well as the union's By-Laws and Constitution.*

*This protest alleges violations and/or violations of the Constitution of the International Union of Operating Engineers; violations and/or election violations of the By-Laws of IUOE Local 150; violations of the LMRDA (Labor-Management Reporting and Disclosure Act); violations of the members Bill of Rights under 29 USC 411; violations of election procedures set forth under 29 USC 481; violations in derogation of fiduciary responsibilities under 29 USC 501; and also violations under the Code of Federal Regulations (CFR) including but not limited to abuses of campaign safeguards. ERISA violations have also been implicated.*

*None of the citations of alleged violations of union and/or labor laws below are meant to be exclusive of other violations that the complained of conduct may have violated. All citations are for the purpose of including, but not limiting, the election protest to potential legal infractions identified herein.*

*Violations of IUOE Local 150 By-Laws include Article IX, Sections 5, 6 and 7; Article XI the Duties of Officers; and, Article XIV, the rules governing elections. Violations of the Constitution of the IUOE include Article XVI violations, among others.*

### *Election Violations:*

1) *Improper Election Campaign Mailing and use of Union Funds:*
   William E. Dugan on July 13, 2007, one month before the ballots were to be mailed, sent a letter on Local 150 letterhead to the entire membership informing them that their identity has probably been compromised by a security breach. He notifies the membership that it was done by Joe Ward and his campaign team and that Local 150 has filed suit in federal court against Team 150 and Joe Ward. This letter was sent out with union funds. (Exhibit A)

   *Violations include: LMRDA Section 401(g). 29 USC 481; also, violation of 29 CFR 452.73 Use of Union Funds.*

2. *Improper Election Use of Benefit Plan Funds:*
   The UEP never answered our mail-outs regarding the pension and health and welfare issues we addressed in this campaign. Instead, MOE sent mail outs paid for by the funds to counter Team 150 claims of malfeasance and

waste in Pension planning and waste and inefficiency of the Pharmacy in Countryside. (Exhibit B)

*Violations include: LMRDA Section 401(g), 29 USC 481; also, possible ERISA violation -- use of benefit funds.*

3.    *Improper Election Use of Union Newsletter and Union Funds:*
Use of the Union newspaper, especially the headline in February, 2007 Union Newspaper -- Local Sues Treasurer Ward! Bill Dugan says" I never imagined that he would have done something like this -- profited personally at the expense of Local 150 and its members. "Dugan used this union paper to slander Joe. The editor stopped printing Joe Ward's articles as of the March 2007 issue. We have all the newspapers back to August, 2006. Included here is the November, 2006 edition where he uses the paper to counter our campaign issues on the pension. The International Union's magazine in the Spring 2007 issue promoted Bill Dugan. The International Union also issued a resolution to stop access to our website and to stop the voice of the opposition. The September, 2007 issue has no notices of the identity theft issue which they used in issues prior to the election to campaign against Team 150.

*Violations include: LMRDA Section 401(g), 29 USC 481; also, violation of 29 CFR 452.75 Union Newspaper*

4.    *Improper Election Conduct In Violation of Members Rights:*
Seven business agents and other staff were fired for political reasons (Their statements Exhibit D).

*Violations include: LMRDA Section 401(e), 29 USC 481; also, violation of 29 USC 411 Sections (a) (1) & (2) Bill of Rights*

5.    *Improper Election Conduct and Improper Use of Union Funds:*
The fired staff was replaced with 20-25 new staff for the purpose of campaigning which included hand delivering UEP campaign literature to job sites (bags left on machines or by time clocks by business agents Exhibit E).

*Violations include: LMRDA Section 401(g), 29 USC 481.*

6.    *Improper Election Campaigning and Use of Union Funds:*
Agents and other staff campaigned on work time (claimed they took personal days which new hires would not have any time available)
   a. Told members on job sites to remember who sold you your card.
   b. Told members that their votes would not be confidential or secret therefore intimidating a large portion of the membership not to vote

    c. Agents Campaigning during working hours– Mike Kresge, Dist. 4 agent said, " I'm not supposed to do this but I am going to anyways," in a landfill south of Rockford.

    d. Agents telling municipality members "If Team 150 gets in they will drop you from the Union when your contract expires."

    e. Campaign literature in the agent's office in view while speaking to members. (Picture of Mike Kresge's office enclosed.)

    f. Hiring 20-25 additional staff. Total Business agent's salaries have increased on the monthly expenses from $695,000 in August of 2006 to $820,000 in January of 2007. Raises take place June 1st.

*Violations include: 29 USC 411 Bill of Rights [a thru e], Violations of LMRDA Section 401(e) & (g)*

7.    *Improper Electioneering; Improper Use of Union Funds; Improper Conduct in Violation of Constitution and Article VI By-Laws Regarding Membership:* Business Agents signing up members (selling cards) up to the deadline of June 30, 2007. We believe the number of new members has increased dramatically since August of 2006. The Executive Board has been asking for a report since about last November of all new members from August 1, 2006, we were supposed to have it at our March meeting on the 29th but we were never given the report we requested.

    a) Former rules and standards went out the window in the selling of these new cards <u>including but not limited to Advisory Board and Executive Board approval</u>. Members were reinstated unfairly and in a discriminating manner. One of our supporters, Robert Law, was expelled in February 2007 and was never reinstated although he has the funds to pay his dues. He was required to attend the Advisory Board (which was never before required of members working for the City of Chicago unless they quit their City job and needed to go on our out-of-work list), and pass three proficiency tests while others (Gary Benefield reinstated expelled member, copy enclosed) who just had to pay the agent. Our supporter never received a ballot.

    b) Request all accounting records from August 1, 2006 through September, 2007 to compare to report we received from concerned party.

    c) Manipulating the hiring hall lists for votes by sending new members out to jobs which was highly out of ordinary procedure. (This activity was documented as it occurred in Districts 2 and 5.)

d) Local 150 Business Agent who sold union cards to the Hazelcrest police sergeants on June 27, 2007, told these new members that they will get a ballot. When asked by one of the sergeants who the candidates are he told them that there is only one - Bill Dugan, the other guy will be in jail.

e) Agents solicited permitted members to sell them a Local 150 card, "but first let me tell you about Bill Dugan." This was reportedly done by Albert Dunker, repair shop agent.

f) All permit members inquiring about receiving their new card were told they must schedule appointments with the District 1 office rather than their home district office to get their card.

g) Agents were issued receipt books (each book contains 50 receipts) and were given stacks of tri-fold cards (membership applications) for the purpose of selling cards (see example enclosed). There are 63-65 staff members and if each sold 50 cards for the election that is 3,150 to 3,250 cards sold for votes. There was a higher than ordinary number of transfers into our local from Local 139. Transfers are not usually allowed during our work season, especially when we have members on the out-of-work list. These members were designated to various districts to hide what was going on.

h) No one can be sold a card without completing a Comet Class. Jim Sweeney is in charge of the Comet Class records and has access to change or falsify them.

i) There are reports that cards were sold after the June 30 deadline for a vote. We suspect that any current member who wanted to get a son, daughter, relative or neighbor in the local had the opportunity to do so in exchange for support and a vote for Bill Dugan. We suggest all accounting records from July 1, 2007 through the next two quarters be examined to see how many new members were sold cards but whose membership papers they will now take their time to process.

*Numerous violations include: 29 USC 411 Bill of Rights; LMRDA 29 USC 481 Election Procedures; 29 USC 501 Fiduciary Responsibility of Officers of Labor Organizations and Violations of IUOE Local 150 By-Laws Article VI, Sections 1 thru 3.*

8.  *Improper Election Conduct, Use of Funds and Use of Joint Contribution Funds:*
    Training Site staff was fired for supporting Team 150 and replacements were hired for the purpose of campaigning. Statements from Training site staff enclosed, also eyewitness account of the use of Apprenticeship resources for the purpose of campaigning -- copy machines, phones, apprenticeship classes, access to the training site, etc. The Training Site completion was accelerated so that the Grand Opening will coincide with the election. The original completion schedule was for the fall of '07. This was done at much expense to the membership because of overtime costs, etc.

    *Violations include: 29 USC 411 Bill of Rights [a thru e];  LMRDA Section 401(e) & (g)*

9.  *Improper Electioneering, Improper Use of Union Funds, Improper Conduct in Violation of Constitution and Article VI By-Laws Regarding Membership:*
    Hispanic vote -- union cards sold to illegal's who should not have received ballots.

    *Numerous violations include:  29 USC 411 Bill of Rights; LMRDA 29 USC 481 Election Procedures; 29 USC 501 Fiduciary Responsibility of Officers of Labor Organizations.*

10. *Improper Election Procedure:*
    The length of time for a ballot to be returned is inadequate because of the poor delivery record of the postal service in the Chicago area

    *Violations include: 29 CFR 452.67 Distribution of Campaign Literature*

11. *Improper Election Campaign Conduct:*
    At the January 2007 General Membership meeting members supporting the UEP were let in the side doors so that they could sit in front and by the microphone.  At that meeting and at other union meetings UEP Campaign literature was on the seat of every chair in the union hall.

    *Numerous violations include 29 USC 411 Bill of Rights*

12. *Improper Election Campaign Conduct in violation of the Members Rights, Compromised Secrecy of the Ballots and the Integrity of the Election Process:*
    Stewards in the municipality sector where instructed to collect ballots.  From July 2006 through the present the business agents in this sector constantly campaigned for Bill Dugan by intimidating these members that if Joe Ward is elected their sector will be thrown out of Local 150.

*Violations include:  29 USC 411 Bill of Rights; also, LMRDA 29 USC 481, Sections (e) & (g)*

13.  *Improper Election Campaign Conduct in violation of the Members Rights, Compromised Secrecy of the Ballots and the Integrity of the Election Process:* Landscape stewards/owners/agents collected ballots from landscapers.

 *Violations include:  29 USC 411 Bill of Rights; LMRDA 29 USC 481, Sections (e) & (g); also, possible violation of 29 USC 504, Section 302 (b) (1)*

14.  *Illegal and/or Improper Election Conduct:* The UEP took contributions or received things of value from non-union companies including Bond Brothers.

 *Violations include:  29 USC 504, Section 302.*

15.  *Improper Election Conduct and use of Union/Joint Contribution Funds:* MOE pharmacy staff was called into a meeting headed by Jim Sweeney and Steve Cisco and was instructed to "campaign" for Bill Dugan by singing his praises and bad-mouthing Joe Ward.

 *Violations include:  29 USC 481, Section 401(g)*

16.  *Improper Election Conduct, Use of Union Funds and/or Use of Joint Contribution Funds:* Apprenticeship classes were used to campaign for Bill Dugan.
   a.  During these classes they were told how wonderful Bill Dugan was and talked about how awful the opposition was.
   b.  Paddock gave them shirts in UEP colors and told them they were to wear them to the General Membership meeting.
   c.  Apprentices were given double credit for attending the General Membership meeting in July, 2007, and wearing their green shirts.
   d.  Proficiency requirements were changed to facilitate the apprentices passing their proficiency tests.
   e.  Newly indentured apprentices were immediately required to pay dues while serving a probation period so that they could vote. Request for revision by DOL of Apprenticeship Standards for this policy change. Prior to this election year apprentices would not become a dues paying member until completion to the probation period.  Money was collected for dues without an approved revision of the Apprenticeship Standards.  They were sold union cards so that they would get a ballot which contradicted set procedure.
   f.  The Apprenticeship Coordinator, Bob Paddock, took groups of apprentices out for pizza and beer at Cemeno's or Sports bars in

the Joliet area, one every two weeks since January, 2007. The charges for each party were between $700.00 and $1,000.00 on a credit card for each party. Bob Paddock claims these parties were a class on unionism; we charge that they were nothing more than Bill Dugan rallies. Who paid for these rallies?

g. A ballot signing party was held by Bob Paddock and the Apprenticeship staff.

*Violations include: LMRDA 29 USC 481, Sections (e) & (g); 29 USC 411 Bill of Rights; and possibly ERISA.*

17. *Improper Election Conduct:*
Campaigning at Comet classes by having only UEP candidates speak to the class about Bill Dugan and the negative things about Joe Ward and then handing out UEP campaign literature in the parking lot. All new members must attend a Comet Class before their membership papers can be processed. Jim Sweeney had total control of the list of who completed the class and was ready to go. This included name, address, phone numbers and employer. It would have been easy to make contact with these individuals and sell them a card.

*Violations include: LMRDA 29 USC 481, Sections (e) & (g).*

18. *Improper Election Campaign Conduct in violation of Members Rights, Compromised Secrecy of the Ballots and the Integrity of the Election Process, plus Illegal and Improper Electioneering:*
Ballot signing parties – we have pictures of Jim McNally, Assistant to Bill Dugan in attendance and witnesses saw Business Agent Kevin Burke actually filling out other members ballots and then placing them in the ballot boxes.

*Violations include: 29 USC 411 Bill of Rights; also numerous LMRDA violations*

19. *Improper Election Conduct and Use of Union Funds:*
The UEP used the copy machines at all the union offices and at the training site offices to run off UEP handouts. This was witnessed at the training site where staff was also seen carrying out UEP banners and signs. We request a report of the amount of copies run off during the period of August 2005 through July 2006 so that it can be compared to the amount of copies run off from August 2006 through August 2007 to show that these union resources were used for campaign purposes.

*Violations include: LMRDA 29 USC 481, Section 401 (g); 29 CFR 452.73*

20. *Improper Election Conduct and Use of Union Funds:*
UEP candidates used Union funds to file frivolous lawsuits against Joe Ward and Team 150 for the purpose of using them for their campaign literature.

*Violations include: LMRDA 29 USC 481, Section 401 (g); 29 CFR 452.73*

21. *Improper Election Conduct and Use of Union Funds:*
Used the Teamster hall to phone bank.

*Violations include: LMRDA 29 USC 481, Section 401 (g); 29 CFR 452.73*

22. *Improper Use of Union and/or Joint Contribution Funds::*
Used the membership money to showcase the New Training Site giving Bill Dugan sole credit for it. Frivolous expenditures were made regarding the Training Site Grand Opening event. It was used as a campaign rally for the UEP. Shirts in the UEP's colors were given to all staff and apprentices who were told that it was mandatory to wear the green shirts and to work the event. Water bottles with Bill Dugan's name on them were handed out at the Grand Opening. Jansco Promotional Products said that they supplied 5,000 bottles at a cost to the union of $1.18 per bottle which was $5,900.00 so that Bill Dugan can have his name promoted. Plain old water bottles without Dugan's name on them would have cost about $1,100.00 for 5,000.

*Violations include: LMRDA 29 USC 481, Section 401 (g); 29 USC 501 Breach of Fiduciary Duty; and possibly ERISA.*

23. *Improper Use of Union and/or Joint Contribution Funds:*
Use of apprentice funds? Or union funds? To paint the crane at the Training Site UEP colors – black and green.

*Violations include LMRDA 29 USC 481, Section 401 (g); also, 29 USC 501 Breach of Fiduciary Duty.*

24. *Improper Election Campaign Mailing and Use of Union Funds:*
The IUOE newsletter promoted Bill Dugan and the Training Site by including a special color magazine for the July 2007 issue.

*Violations include LMRDA 29 USC 481, Section 401 (g); also, 29 CFR 452.75*

25. *Improper Election Conduct and Use of Union Funds:*
Used Local 150 money to color the Dues Buttons in the UEP campaign colors.
*Violations include LMRDA 29 USC 481, Section 401 (g)*

26. *Improper Election Conduct and Use of Union Funds, Violations of Members Rights:*
Used dues money to try to shut down the members' opposition website by requiring login which their site violated for 5 days right before the election.

*Violations include: 29 USC 411, Bill of Rights*

27. *Improper Election Conduct and Election Mailing Procedures:*
Team 150 was forced to use the mail house the union used. At first we were told we could use any mail house as long as they would sign a confidentiality agreement with Local 150. Then as we were walking to our cars they ran out and said we could only use Dahlgren or Bond Brothers. This is a conflict because our most important mailing -- our sample ballot has still not reached some of our membership.

*Violations include 29 CFR 452.67 Distribution of Campaign Literature; also, LMRDA 29 USC 481, Section 401(e); and 29 USC 411, Bill of Rights*

28. *Improper Election Conduct:*
Election Commissioner Bob Gillengarten campaigning for Dugan on UEP website video clip.

*Violations include: LMRDA 29 USC 481, Section 401(e); and 29 USC 411, Bill of Rights*

29. *Improper Use of Union Funds and/or Union Facilities:*
What is the address of the UEP Campaign office? Joe Ward's secretary's position was eliminated by Bill Dugan. Dugan told her that he could not allow any politicking in the union office. Later he took Joe Ward's office away from him. If the union offices were used by the UEP as their campaign office then they also used the union resources -- copy machines, phones, faxes, utilities and staff members for their campaign. Where was the UEP's campaign office, none is listed on their website or any of their literature. Who is their "secretary" or office help?

*Violations include: 29 CFR 452.82 Reprisal for Exercising Right; also, violation of LMRDA 29 USC 481, Sections 401 (e) & (g)*

30. *Improper Use of Union Funds and/or Union Facilities:*
Agents constantly campaigned during work hours. Enclosed are a sampling of reports received from members. Agents drove to UEP rallies in union vehicles, we have pictures. Bill Dugan drove the Local 150 van to the District 4 hall for his Rockford rally. Photo available.

*Violations include: LMRDA 29 USC 481, Section 401 (e), also, 29 CFR 452.76 Campaigning by Union Officers.*

*WHEREFORE, FOR ALL THE REASONS SET FORTH ABOVE, TAKEN BOTH INDIVIDUALLY AND IN CONJUNCTION WITH EACH OTHER, THE ELECTION RESULTS OF AUGUST 25, 2007 MUST BE SET ASIDE AND A NEW ELECTION ORDERED. IT IS ALSO PETITIONED HEREIN THAT REMEDIAL ACTION IS REQUIRED IN ORDER TO UNDO THE PREJUDICIAL EFFECTS CREATED BY THE ABOVE DESCRIBED CONDUCT AND TO GUARANTEE A FAIR ELECTION PROCESS.*

Signed this 17th day of September, 2007

By:

_Joseph P Ward_

Joseph P. Ward

On behalf of and as representative of these Team 150 Candidates:

Joseph P. Ward – Candidate for President-Business Manager
James J. Miller – Candidate for Vice President
Roger F. Allen – Candidate for Recording-Corresponding Secretary
C. Wayne Snider – Candidate for Financial Secretary
Frank A. Studer – Candidate for Treasurer
Craig Jorsch – Candidate for Executive Board District 1
Donald Matteson – Candidate for Executive Board District 2
Raymond Stevens – Candidate for Executive Board District 3
Bradley Milliken – Candidate for Executive Board District 4
Lance Yednock – Candidate for Executive Board District 5
Tim Loftus – Candidate for Executive Board District 6
Greg Allen – Candidate for Executive Board District 7
Roger Hoffman – Candidate for Executive Board District 8
Jerry Jorsch – Candidate for Auditor
Jason Ness – Candidate for Auditor
Michael Quale – Candidate for Trustee
Thomas Dalton Jr. – Candidate for Trustee
Stephen Mullen – Candidate for Trustee
George Pilate – Candidate for Conductor
Randall Rexford – Candidate for Guard


**UNITED STATES POSTAL SERVICE**

Home | Help | Sign In

Track & Confirm     FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: RR85 4269 530U S
Detailed Results:

- Delivered, September 21, 2007, 6:52 am, LA GRANGE, IL 60525
- Arrival at Pick-Up-Point, September 18, 2007, 7:36 am, LA GRANGE, IL 60525
- Arrival at Unit, September 18, 2007, 7:36 am, LA GRANGE, IL 60525
- Acceptance, September 17, 2007, 3:30 pm, JOLIET, IL 60436

Track & Confirm

Enter Label/Receipt Number.

Go >

*Restore old USPS Track Record*

## Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.   Go >

---

POSTAL INSPECTORS     site map   contact us   government services   jobs   **National & Premier Accounts**
Preserving the Trust          Copyright © 1999-2004 USPS. All Rights Reserved. Terms of Use  Privacy Policy

| Registered No. | | | Date Stamp |
|---|---|---|---|
| RR85A2695301B | | | |

| Reg. Fee | $9.50 | | |
| Handling Charge | $0.00 | Return Receipt | $2.15 |
| Postage | $7.75 | Restricted Delivery | $0.00 |
| Received by | | | |

To Be Completed By Post Office

Customer Must Declare
Full Value $90.00

☐ With Postal Insurance
☒ Without Postal Insurance

*Domestic Insurance up to $25,000 is included in the fee. International Indemnity is limited. (See Reverse).*

## OFFICIAL USE

FROM:
JOSEPH P. WARD & TEAM 150
20923 S. RIVER RD
SHOREWOOD, IL 60404

TO:
ST FRANCISCO REG.-Coe. SECRET.
IUOE LOCAL 150
6200 JOLIET ROAD
COUNTRYSIDE, IL 60525

To Be Completed By Customer (Please Print) All Entries Must Be in Ballpoint or Typed

Form 3806,     Receipt for Registered Mail     Copy 1 - Customer
2004 (7530-02-000-9051)              (See Information on Reverse)
For domestic delivery information, visit our website at www.usps.com ®

# ATTACHMENT 2

# United States of America

## DEPARTMENT OF LABOR
## OFFICE OF LABOR-MANAGEMENT STANDARDS
## SUBPOENA DUCES TECUM

TO International Union of Operating Engineers Local 150

6200 Joliet Road, Countryside, IL 60525

*At the instance of the* District Director

**U.S. DEPARTMENT OF LABOR,** *you are hereby required to appear before* Shamus McGee, Investigator

*of the* **OFFICE OF LABOR-MANAGEMENT STANDARDS, U.S. DEPARTMENT OF LABOR,** *at*

230 South Dearborn Street, Suite 774

*in the City of* Chicago, IL

*on the* 21st *day of* March ,20 08 , *at* 10:00 *o'clock* a. m.

*of that day, in the Matter of* an investigation by said office involving complaints filed with the

U. S. Department of Labor regarding the International Union of Operating Engineers Local 150

officer elections held on August 25, 2007.

*And you are hereby required to bring with you and produce at said time and place the following books, papers, and documents:*

See the attached two pages.

# FAIL NOT AT YOUR PERIL.

**IN TESTIMONY WHEREOF,** *the seal of the* **U.S. DEPARTMENT OF LABOR** *is affixed hereto, and the undersigned, the* District

Director, Office of Labor-Management Standards

, *of said* **U.S. DEPARTMENT OF LABOR,**

*has hereunto set his hand at* Chicago, IL

*this* 14th *day of* March , 20 08

Mary Hubiet

**OLMS-13 (9/88)**
GPO 937-870

**150 Attachment to March 14, 2008 Subpoena Duces Tecum - IUOE Local**

All records maintained by the International Union of Operating Engineers Local 150 (Local), 6200 Joliet Road, Countryside, Illinois 60525, pertaining to the nominations and election of officers conducted on August 25, 2007. These records are to include, but not limited to: 1) membership list(s), mailing lists and voter registers, 2) minutes of all meetings including the Local Executive Board and membership meetings pertaining to said nomination and election of officers, 3) all ballots including challenged and unused, 4) all working papers, tally sheets and other documents used in conducting said nomination and election of officers, including the reconciliation of votes cast and the results reported to the membership, 5) electronic membership records and eligibility lists as of the date of each election to include the member's full name, address, phone number, membership status/designation, employer, and start date with union, 6) all financial records pertaining to the conduct of said election, including invoices and cancelled checks or pay stubs for election expenses paid to members and vendors, 7) any and all records that exist and are used by the Local's officers to determine a member's status, and 8) all rules and regulations promulgated concerning said nominations and election of officers.

At this time, we are asking for the following documents:

1) A copy of any and all e-mail messages sent to John Hughes and/or other stewards regarding the collection of voted ballots from Tom Spaeth or any other union representatives.   Note that the copy of the e-mail provided on March 12, 2008 does not appear to have been sent to Hughes.
2) A copy of any and all follow-up e-mail messages sent by Spaeth, or any other union representatives, to Hughes and/or other stewards that instruct the stewards to have the members mail their own ballots.
3) A listing, electronic if available, containing the names of all permit holders and registered apprentices who were sold membership cards during the period January 1, 2006 through December 31, 2007.  The list should include each member's union identification number, mailing address, and telephone number.
4) A listing, electronic if available, containing the names of registered apprentices as of June 30, 2007.  The list should include the address, phone number(s), and union identification number of all dues paying apprentices regardless of their good standing status.
5) A copy of the invoice supporting the purchase of the water bottles distributed during the 2007 grand opening of the Wilmington apprenticeship school.
6) Documentation that supports Steve Karpowicz and Rajko Jovicevic's claims that they used vacation leave sometime between August 11, 2007 and August 25, 2007.
7) Copies of general membership meeting minutes for January 2006 and July 2007.
8) For all issues of the *Local 150 Engineer* mailed between January 2006 and December 2007, provide USPS-generated documentation showing the mailing

**150 Attachment to March 14, 2008 Subpoena Duces Tecum - IUOE Local**

dates and costs (for example, USPS Postage Statements that have been stamped and signed by the USPS).

9) Minutes of union meetings held during the fall of 2006 as referenced on page 94 of the "Report To The Executive Board On The Investigation Into The Protest Of The Local 150 Election 2007."

10) A listing, electronic if available, of all Local 150 members who were mailed a ballot during the August 2007 officer election. The list should include each member's address, union identification number and telephone number(s).

11) For the July 13, 2007 privacy protection notice letter that was sent to the Local 150 membership from William Dugan. Please provide the USPS-generated documentation or other supporting documentation that shows the mailing date and cost.

12) A complete copy of the Information Technology Audit Report along with the name of the consulting firm and/or the consultant that performed the March 2007 audit of the Local's Information Technology System as a result of the security breach of the Local's computer systems.

13) A listing, electronic if available, containing the names of all Comet class attendees during the period January 1, 2006 through December 31, 2007.

# RETURN OF SERVICE

**I hereby certify that a duplicate original of the within subpoena was**

☒ in person.

☐ by leaving at principal office or place of business, to wit:

Dale Person Legal Counsel For Local 150

on the person named herein on:

March 14, 2008

(Month, day, year)

Wendell McGee Jr.

(Name of person making service)

Investigator

(Official title)

- - - - - - - - - -

**duly served**

Indicate by check method used:

**Check applicable boxes:**

☒ I certify that the person named herein was in attendance as a witness at: ___ Margo Federberg

☐ provided the records named herein

on: ___

(Month, day or days, and year)

___

(Name of person certifying)

___

(Official title)

CASE NUMBER ___ 310-22982(01)

# ATTACHMENT 3

# INTERNATIONAL UNION OF OPERATING ENGINEERS

LOCAL UNION NO. 150, 150B, 150A, 150C, 150RA, 150D, 150G, 150M

AFFILIATED WITH THE A.F.L.-C.I.O.



6140 JOLIET ROAD
COUNTRYSIDE, IL 60525

708-579-6663
FAX 708-588-1647

DALE D. PIERSON
ELIZABETH A. LAROSE
MELINDA S. HENSEL
ROBERT E. ENTIN
BRYAN P. DIEMER

**LEGAL DEPARTMENT**

March 21, 2008

CHARLES R. KISER
MARC R. POULOS
ROBERT G. REITER, JR.
MELISSA SINETTI
LAUREN SHAPIRO
KARL E. MASTERS

VIA FACSIMILE AND REGULAR MAIL
Mr. Shamus McGee, Investigator
U.S. Department of Labor
Office of Labor Management Standards
230 South Dearborn, Room 774
Chicago, IL 60604

> Re:  Investigation into the Local 150 Officers Election 2007
> Subpoena *Duces Tecum* Returnable March 21, 2008
> Our File No. LI-00146

Dear Mr. McGee:

At approximately 6:15 p.m. on March 14, 2008, at the conclusion of the six-hour interview of William E. Dugan, investigators from the Department of Labor served me with the above subpoena. Local 150 objects to this subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure and the applicable Regulations of the U.S. Department of Labor as follows:

First and foremost, the subpoena does not include the applicable witness fee and/or provision for payment of copies sought. It is consequently void and the Union has no obligation to respond.

Next, without waiving the above objection, the subpoena seeks information not reasonably related to allegations of the Protest filed by Ward and his Team 150 into the Local 150 August 2007 Election. It is therefore outside of the scope of the Department of Labor's authority to investigate. 29 U.S.C. § 452.136.

Finally, the vast majority of the documents requested by the subpoena have already been produced to the Department of Labor voluntarily and at great time and expense to the Local Union. Indeed, everything in the first paragraph of the rider to the subpoena concerning the election materials preserved by the Election Commissioners was produced within the first few days of notice of your investigation. If you have already lost these materials and/or destroyed them, Local 150 asks that you begin an immediate investigation into your own negligence.

If, on the other hand, you have not lost or destroyed the election materials, then all the information you seek concerning Local 150 members is already in your possession. No such



INTERNATIONAL UNION OF OPERATING ENGINEERS
LOCAL UNION No. 150
**LEGAL DEPARTMENT**

Mr. Shamus McGee, Investigator
March 21, 2008
Page 2

specific lists as you request exist. However, you can glean from election materials the names and address of all individuals who were considered to be in good standing and received ballots on the effective date, June 30, 2007. You also have sufficient information to determine which individuals returned ballots. Local 150 has no obligation to perform your investigation for you under applicable federal law.

Finally, even if the membership list you requested exist, Local 150 would be under no obligation to furnish them to you or anyone else under the Associational Privilege. See NAACP v. Alabama ex rel. Patterson, 357 U.S. 449 (1958); AFL-CIO v. FEC, 357 U.S. App. D.C. 47, (D.C. Cir. 2003); Marshall v. Bramer, 828 F.2d 355 (6th Cir. 1987); Anderson v. Hale, 2001 U.S. Dist. LEXIS 6127, 2001 WL 503045 (N.D. Ill. 2001). Moreover, your inability to assure us that our Membership List would not be secure against some request by an outside party from a Freedom of Information Act request renders your request itself unlawful.

Very truly yours,

IUOE, LOCAL 150, AFL-CIO
LEGAL DEPARTMENT

*Dale D. Pierson /ss*

Dale D. Pierson
General Counsel

DDP/lms

# ATTACHMENT 4

**Documents Not Produced**

The following documents within the scope of the subpoena served on Local 150 on March 14, 2008 have not produced by Local 150 as of April 28, 2008.

Numbering corresponds to numbering in the attachment to the subpoena. Documents in *italics* have been expressly refused.

1)    A copy of any and all e-mail messages sent to John Hughes and/or other stewards regarding the collection of voted ballots from Tom Spaeth or any other union representatives. (Only emails sent using the domain name Local150.org are sought in this request.)

2)    A copy of any and all follow-up e-mail messages sent by Spaeth, or any other union representatives, to Hughes and/or other stewards that instruct the stewards to have the members mail their own ballots. (Only e-mail using the domain name Local150.org are sought in this request.)

3)    *A listing, electronic if available, containing the names of all permit holders and registered apprentices who were sold membership cards during the period January 1, 2006 through December 31, 2007.  The list should include each member's union identification number, mailing address, and telephone number.*

4)    *A listing, electronic if available, containing the names of registered apprentices as of June 30, 2007.  The list should include the address, phone number(s), and union identification number of all dues paying apprentices regardless of their good standing status.*

12)    *A complete copy of the Information Technology Audit Report along with the name of the consulting firm and/or the consultant that performed the March 2007 audit of the Local's Information Technology System as a result of the security breach of the Local's computer systems.*

Further, although Local 150 provided a listing, of all Local 150 members who were mailed a ballot during the August 2007 officer election, the list failed to include phone numbers, membership status/designation, employer and start date with the union. This additional information was sought in the introductory paragraph of the attachment to the subpoena.